IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF GEORGIA

COLUMBUS DIVISION


TODD BLACKBURN and SAMANTHA          )
BLACKBURN,                           )
                                     ) CIVIL ACTION NO.
          Plaintiffs,                ) 4:11—CV—00039—CDL
                                     )
vs.                                  ) DECEMBER 19, 2012
                                     )
BAC HOME LOANS SERVICING, LP,        ) MOTION HEARING
                                     )
          Defendant.                 )


TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE CLAY D. LAND,

UNITED STATES DISTRICT JUDGE


Proceedings recorded by mechanical stenography; transcript
produced by computer.

BETSY J. PETERSON, RPR, CCR
Federal Official Court Reporter
Post Office Box 81
Columbus, Georgia  31902
(706) 317-3111

| | |
|---|---|
| 1 | APPEARANCES |
| 2 | |
| 3 | FOR THE PLAINTIFFS: |
| 4 | CHARLES A. GOWER |
| | charlie@cagower.com |
| 5 | MIRANDA J. BRASH |
| | miranda@cagower.com |
| 6 | TERESA T. ABELL |
| | teresa@cagower.com |
| 7 | Charles A. Gower, P.C. |
| | Attorneys at Law |
| 8 | 1425 Wynnton Road |
| | Columbus, Georgia  31906 |
| 9 | (706) 324-5685 |
| 10 | |
| 11 | FOR THE DEFENDANT: |
| 12 | ANDREW G. PHILLIPS |
| | aphillips@mcguirewoods.com |
| 13 | R. PATRICK DOVER |
| | rdover@mcguirewoods.com |
| 14 | McGuireWoods LLP |
| | 1230 Peachtree Street, N.E. |
| 15 | Suite 2100 |
| | Atlanta, GA  30309-3534 |
| 16 | (404) 443-5500 |
| 17 | THOMAS F. GRISTINA |
| | tfg@psstf.com |
| 18 | Page, Scrantom, Sprouse, Tucker & Ford, P.C. |
| | Attorneys and Counselors at Law |
| 19 | 1111 Bay Avenue, Third Floor |
| | Post Office Box 1199 |
| 20 | Columbus, Georgia  31901 |
| | (706) 324-0251 |
| 21 | |
| 22 | COURT REPORTER: |
| 23 | BETSY J. PETERSON, RPR, CCR |
| | Federal Official Court Reporter |
| 24 | P. O. Box 81 |
| | Columbus, GA 31902 |
| 25 | (706) 317-3111 |

```
 1            (Proceedings on December 19, 2012, commencing at 10:13
 2       a.m., as follows:)
 3                THE COURT:  Please be seated.  Good morning.
 4                This will be in the case of Todd Blackburn and
 5       Samantha Blackburn versus Bank of America —— well, versus BAC
 6       Home Loans Servicing, LP, Case No. 4:11-CV-39.
 7                Let's identify who is present this morning.
 8                For the plaintiffs?
 9                MR. GOWER:  Charlie Gower and Teresa Abell and
10       Miranda Brash.
11                THE COURT:  Good morning.
12                And for the defendant?
13                MR. GRISTINA:  Good morning, Your Honor.  Thomas
14       Gristina.  And I have with me Andrew Phillips, who will be lead
15       counsel today —— he's from McGuireWoods in Atlanta —— and as
16       well one of his colleagues, Patrick Dover, with McGuireWoods as
17       well.
18                THE COURT:  Okay.  I have reviewed the supplemental
19       briefs that were filed at the Court's request.  And after
20       reviewing those briefs, they seem to confirm what I found,
21       which there appears to be no Georgia Appeals Court decision
22       that holds that you can recover emotional distress damages as
23       an element of damages for a conversion claim, and there appears
24       to be no Court of Appeals decision in Georgia that says that
25       you cannot recover emotional distress damages in a conversion
```

1    claim.

2              Do you agree with that, Mr. Gower, as far as — I

3    know you're going to make arguments that, you know, intentional

4    tort claims you can get them, this, that, and the other.  But

5    there's — oddly enough, we haven't found or I haven't found

6    any case where it explicitly says it's a conversion claim and

7    you can or you can't get emotional distress damages.

8              Have the plaintiffs found any case?

9              MR. GOWER:  I think we have.

10             THE COURT:  Well, tell me what it is.  Because I read

11   the ones you cited in your brief, and I didn't see those as

12   conversion claim cases.  But tell me what they are, and we'll

13   look at them again.

14             Which cases are conversion cases where the Court, as

15   part of its holding — not as dicta — said, "Yes, you can

16   recover emotional distress damages."

17             MS. BRASH:  Your Honor, if you look at the *Chamberlin*

18   *Company of America v. Mays*, the Court — you are correct the

19   Court does not explicitly state a conversion can recover

20   emotional distress.  But the plaintiff in that case — her

21   claim was a conversion claim, and she did get emotional

22   distress damages for that.

23             THE COURT:  Okay.

24             MR. PHILLIPS:  Your Honor —

25             THE COURT:  Just a minute.

```
 1              MR. PHILLIPS:  Certainly.
 2              THE COURT:  And did the Court in that case — did
 3   they treat that as a claim for damages to a person's peace and
 4   — or did they say?
 5              MS. BRASH:  I don't believe that they said.
 6              THE COURT:  Okay.  All right.
 7              MS. BRASH:  The statute doesn't cite it in the
 8   opinion.
 9              THE COURT:  Okay.
10              All right.  Mr. Phillips, do you have — I'll go back
11   and read that case again.
12              Mr. Phillips, do you have any cases in which the
13   Georgia Courts of Appeals have said in a holding that in a
14   conversion claim you cannot recover emotional distress
15   damages?
16              MR. PHILLIPS:  I do not have a case that expressly
17   says that, Your Honor.  However, I have a number of cases where
18   plaintiffs have asserted conversion claims and sought emotional
19   distress damages and the analysis that the Court of Appeals
20   used.  And these are much more recent cases than the Chamberlin
21   case.  It was essentially an intentional infliction of
22   emotional distress —
23              THE COURT:  Yeah, I saw those cases that you cited,
24   but they didn't squarely address the issue —
25              MR. PHILLIPS:  I agree, Your Honor.
```

```
1              THE COURT:  —— of whether ——
2              MR. PHILLIPS:  I guess my —— implicit within those
3    cases, our position would be that if you could simply recover
4    emotional distress damages because you had a successful
5    conversion claim, the entire analysis of —— IIED analysis in
6    those cases would be dicta.  It would be superfluous.  And
7    instead, that's exactly what the Court's decision not to award
8    those damages turns on.
9              THE COURT:  Well, answer this for me.  And this is
10   what I don't fully understand, and maybe you can better explain
11   it, Mr. Phillips.
12              There are cases that stand for the general
13   proposition that in an intentional tort claim the plaintiff can
14   recover emotional distress damages that are proximately caused
15   by the intentional tort.  Why would the Court of Appeals —— if
16   what I've got to do is try to determine how the Georgia Supreme
17   Court would decide this issue, if it was squarely presented to
18   them, why would the Georgia Supreme Court say that in all
19   intentional tort cases you can recover emotional distress
20   damages proximately caused by the intentional tort except for
21   the intentional tort of conversion?  Explain why that would be
22   the likely holding of the Georgia Supreme Court.
23              MR. PHILLIPS:  And, Your Honor, I don't believe that
24   there's a case expressly stating that in every intentional tort
25   case you can, as a component of the damages in that case,
```

 1  automatically get ——

 2          THE COURT:  No.  But there are cases that say ——

 3  there are holdings in Georgia cases that say for at least under

 4  some circumstances intentional torts —— an element of those

 5  damages can be emotional distress if it is proximately caused

 6  by the intentional tort.

 7          So tell me what the analysis is, what the rationale

 8  is, for saying that in some intentional torts you can get

 9  emotional distress but for the intentional tort of conversion

10  you cannot.

11          MR. PHILLIPS:  Well, I think one rationale, Your

12  Honor, is that the damages for conversion —— and first off, I

13  continue to disagree that that's a correct statement of Georgia

14  law.  We believe that the proper ——

15          THE COURT:  Whoa, whoa.  So it's your position that

16  the Georgia Appellate Courts have never held that you can

17  recover emotional distress damages for an intentional tort?

18          MR. PHILLIPS:  There's certainly cases out there that

19  use language suggesting that an intentional tort context in

20  emotional distress damages are recoverable.  But I think if you

21  look at the body of case law, particularly recent case law,

22  when they are making the decision whether those damages are

23  actually recoverable, intentional tort is merely a condition

24  precedent to a further analysis of whether or not the conduct

25  gives rise to an emotional distress claim.

1              But to answer your —

2              THE COURT:  No, no, I don't understand that.  That's

3    just words.  I don't understand that.

4              Is it the defendant's position that under no

5    circumstances have the Georgia Courts of Appeal approved the

6    recovery of emotional distress damages for the commission of an

7    intentional tort?

8              MR. PHILLIPS:  That's not our position, Your Honor.

9    Our position is that there would be a heightened —

10             THE COURT:  So what —

11             MR. PHILLIPS:  — showing required.

12             THE COURT:  What circumstances does the law say you

13   can or cannot recover emotional distress damages for an

14   intentional tort?

15             MR. PHILLIPS:  We believe that in order to recover

16   a — our interpretation of the law is in order to recover a

17   emotional distress damages for an intentional tort, you have to

18   meet the requirements of the intentional infliction of

19   emotional distress —

20             THE COURT:  Well, then, what do you say about the

21   cases that specifically hold, outside of the intentional

22   infliction of emotional distress claim, that you can get

23   emotional distress damages if there is an intentional tort that

24   proximately causes the emotional distress?  How do you

25   distinguish those cases?

1          There are cases out there that I have seen — and
2  some are cited in the supplemental briefs — that say that for
3  some intentional torts you can get emotional distress damages
4  if they're proximately caused by the tort, and you don't have
5  to recover them under an intentional infliction of emotional
6  distress theory.  Do you not agree with that?  Do you not agree
7  that there are cases that say that?

8          MR. PHILLIPS:  I don't believe they say that, Your
9  Honor.  I've reviewed the cases that were cited in the
10  plaintiffs' supplemental brief, and I believe I can distinguish
11  them.  And I don't believe they stand for that proposition,
12  Your Honor, not without some sort of heightened —

13          THE COURT:  So it's the defendant's position that the
14  only circumstances under which emotional distress damages are
15  recoverable for an intentional tort is if the plaintiff is able
16  to meet the requirements of intentional infliction of emotional
17  distress.  Is that the defendant's position?

18          MR. PHILLIPS:  That's correct, Your Honor.  And we've
19  got case cites from very recent cases from the Georgia Court of
20  Appeals where they've essentially found the commission of an
21  intentional tort and then the claim also asks for emotional
22  distress damages.  And the Court said, "Well, if you — in this
23  case you're making a case for intentional tort and you're
24  seeking emotional distress damages, and we are going to" — or
25  as the Court in *DeGolyer v. Green Tree Servicing* said —

 1           THE COURT REPORTER:  Wait, wait, wait.  The Court in
 2    what?

 3           MR. PHILLIPS:  I apologize, ma'am.  *DeGolyer v. Green*
 4    *Tree Servicing*, a 2008 case from Georgia Court of Appeals.

 5           As they said, "Such action for damages for emotional
 6    distress is treated as an action for intentional infliction of
 7    emotional distress, and the burden the plaintiff must meet is a
 8    stringent one in order to prevail."  And that was a wrongful
 9    foreclosure claim, which is a type of intentional tort in
10    Georgia law.

11           *McCarter v. Bankers Trust* had the exact same
12    analysis.  That's a Georgia Court of Appeals case from 2000.
13    And *Auburn v. Branch Banking and Trust*, a 2012 case from just
14    this May, Your Honor —

15           THE COURT:  Are these all cited in your supplemental
16    brief?

17           MR. PHILLIPS:  These cases are actually not.  These
18    are additional cases I came up with after having the
19    opportunity to review the plaintiffs' supplemental brief and
20    prepare for today's oral argument.

21           THE COURT:  Well, slow down, then.  I would have
22    thought these cases would have been included in your
23    supplemental brief.

24           Give me the citations of the cases that you say stand
25    for the proposition that the only time you can recover

1  emotional distress damages for intentional tort is if you prove

2  the elements of the intentional infliction of emotional

3  distress —

4       MR. PHILLIPS:  Certainly, Your Honor.

5       THE COURT:  — claim.  What are those cases again?

6       MR. PHILLIPS:  The *DeGolyer* case is 291 Georgia Court

7  of Appeals 444, 2008 case.

8       *McCarter v. Bankers Trust Company* is 247 Georgia

9  Court of Appeals 129.  It's a 2000 case.

10       And *Auburn v. Branch Banking and Trust* is a — it's

11  actually a Northern District of Georgia case from May 4, 2012,

12  in which Judge Thrash, when faced with a fraud claim that also

13  sought emotional distress damages, went through both an NIED

14  and IIED analysis before ultimately deciding that the

15  plaintiffs couldn't recover.

16       And just one more point I'd like to make —

17       THE COURT:  What case is that?  What's the citation?

18       MR. PHILLIPS:  That one's got a Lexis cite, Your

19  Honor.  It's 2012 U.S. District Lexis 84017.

20       And one other point I'd like to make about these

21  cases is they all arose in — I think they're particularly

22  instructive because they arose in the context of a mortgage

23  relationship between a borrower and lender, which is in a

24  similar situation that we have here.  Although the tort isn't

25  exactly the same, it's a similar relationship between the

1   parties and, therefore, I think the analysis particularly
2   instructive.
3          THE COURT:  Well, I'm going to go back and study the
4   cases, but I just want to make sure I understand what you're
5   saying here today.  It seems to me that it's one thing for the
6   Court to say emotional distress damages cannot be recovered for
7   intentional torts unless you establish the elements of the tort
8   intentional infliction of emotional distress.  It's quite
9   another thing for the Court to not address that issue head-on
10  and then just proceed into an intentional inflection of
11  emotional distress analysis.
12          Doing the latter does not prove that -- or establish
13  that the Court has rejected the notion that you can recover
14  emotional distress damages for an intentional tort.  It could
15  mean that that's just the way the lawyers briefed it.
16          So, I mean, I'll read the cases and see what they
17  say.  But your suggestion to me, as I understand it here today,
18  is that they expressly say that if you've got an intentional
19  tort and you're seeking emotional distress damages, under
20  Georgia law you've got to prove more than the tort and
21  proximate cause.  You've got to prove all of these elements of
22  the intentional infliction of emotional distress claim.  That's
23  what you say these cases say.
24          MR. PHILLIPS:  Yes, Your Honor.  It says they shall
25  be treated as a claim for an action for -- or is treated as an

1   action for intentional infliction of emotional distress.

2          THE COURT:  And in those claims did the plaintiff

3   also have a conversion claim?

4          MR. PHILLIPS:  No, Your Honor, these are not

5   conversion cases.

6          THE COURT:  Well, see, that's what bothers me when I

7   go back and read these cases after somebody has made this kind

8   of argument in a oral argument, is that if there was no other

9   intentional tort committed, then obviously the courts are going

10  to analyze it as an intentional infliction of emotional

11  distress.

12         Now, is that what — how you read these cases?  Or do

13  you read these cases as addressing, okay, the plaintiff has

14  asserted a separate intentional tort, and we find that under

15  that separate intentional tort — such as conversion or

16  trespass — that you can't get emotional distress damages; but

17  what we hold is what you can do is prove this third intentional

18  tort, the intentional infliction of emotional distress.

19         Is that what these cases are doing, or are these

20  cases simply saying that the only intentional tort that is

21  being alleged here is the intentional infliction of emotional

22  distress and, therefore, we go through this analysis?

23         MR. PHILLIPS:  It's not the second, Your Honor.  In

24  both — in all of these cases, there were stand-alone torts

25  alleged for —

 1            THE COURT:  Of what?

 2            MR. PHILLIPS:  Either wrongful foreclosure or, in the

 3   third one, fraud.  And those are all intentional torts under

 4   the law of Georgia.  And in each one of these cases the

 5   plaintiff sought, as a component of damages, emotional distress

 6   damages.  My understanding is in none of these cases was there

 7   a stand-alone IIED claim.  But what the Court did is they

 8   nonetheless said, "When you make these claims and you allege

 9   these damages, we're going to treat this as a claim for

10   intentional infliction of emotional distress."

11            THE COURT:  Does Georgia recognize a tort of wrongful

12   foreclosure that --

13            MR. PHILLIPS:  It does, Your Honor.

14            THE COURT:  -- that -- and it is clear that the

15   Georgia courts have said for that claim you cannot get

16   intentional -- you cannot get emotional distress damages?

17            MR. PHILLIPS:  No, Your Honor.  They said you can get

18   emotional distress damages if you meet the standards of -- what

19   they've essentially said is the same thing we're saying with

20   regard to conversion.  The conduct that gives rise to the

21   foreclosure, much like the conduct that gives rise to the

22   conversion, may support a claim for emotional distress damages

23   if you can meet the heightened quantum of proof required by the

24   intentional infliction of emotional distress standard.  Absent

25   that, you cannot recover emotional distress damages.

1                 And the only reason ——

2                 THE COURT:  Which case —— so which case says that?

3                 MR. PHILLIPS:  Those are the three cases ——

4                 THE COURT:  Those are the three cases that say that.

5                 MR. PHILLIPS:  Yes.

6                 THE COURT:  Okay.  How do you distinguish the case ——

7      you've seen the cases where the Georgia courts have said you

8      can recover emotional distress damages proximately caused by a

9      trespass.  Have you not seen those cases?

10                MR. PHILLIPS:  I am ——

11                THE COURT:  In your research.  Do you disagree with

12     that?  Do you disagree that Georgia courts have said you can

13     recover emotional distress damages proximately caused by a

14     trespass?

15                MR. PHILLIPS:  I don't know if I've seen the specific

16     cases Your Honor is referring to.  What I will say is that just

17     because you can recover those damages, I don't believe

18     proximate cause is the sole requirement.  I think there would

19     still have to be a heightened showing ——

20                THE COURT:  Well, I just want to see how far you

21     believe the law —— or how restrictive the law is on this.

22                It is your interpretation of Georgia law that if you

23     bring a trespass claim and allege as part of your damages that

24     you suffered emotional distress because of it, that in order to

25     recover the emotional distress, you have got to prove more than

1  the elements of trespass and that those damages were

2  proximately caused by the trespass.

3           MR. PHILLIPS:  Yes, Your Honor.

4           THE COURT:  You've got to prove, to get those

5  damages, the elements of the tort intentional infliction of

6  emotional distress.

7           MR. PHILLIPS:  Yes, Your Honor, and that's —

8           THE COURT:  So then you can't recover emotional

9  distress damages on a trespass claim, because the only way you

10  can recover those is a separate tort of intentional infliction

11  of emotional distress.

12           MR. PHILLIPS:  Meeting the standards of that tort,

13  Your Honor, which is essentially —

14           THE COURT:  Tell me the rationale for that.

15           MR. PHILLIPS:  Certainly, Your Honor.

16           THE COURT:  The intentional infliction of emotional

17  distress has been adopted by the Georgia courts not as an

18  element of damage theory but as a separate tort.  Correct?

19           MR. PHILLIPS:  That's correct, Your Honor.

20           THE COURT:  So explain to me the rationale for saying

21  that for these other intentional torts you can't recover

22  emotional distress damages and the only way in Georgia you can

23  recover those is if you meet the standards for intentional

24  infliction.

25           MR. PHILLIPS:  Because, Your Honor, if you can

1    recover — if plaintiffs were correct and it was this binary

2    two-step analysis and all you had to do was prove an

3    intentional tort and you automatically got your emotional

4    distress damages —

5              THE COURT:  No, only if they're proximately caused by

6    the tort.

7              MR. PHILLIPS:  Well, that's true in every case, Your

8    Honor.  You only get damages that are proximately caused by a

9    tort.

10             THE COURT:  Correct.

11             MR. PHILLIPS:  Proximate causation is obviously an

12   element of the tort claim.

13             So if that were true, it would place emotional

14   distress damages on the exact same level as any other damages.

15   And it would essentially eviscerate that entire tort of

16   intentional infliction of emotional distress.  Plaintiffs would

17   never plead intentional infliction because there would be no

18   reason to, because they could escape its heightened

19   pleadings — or heightened proof requirements by simply

20   alleging the intentional tort and collecting on their emotional

21   distress damages.

22             THE COURT:  But there are circumstances where you

23   would have intentional infliction of emotional distress where

24   there is no other intentional tort that covers that.  Wasn't

25   that the purpose of the courts establishing that claim —

1            MR. PHILLIPS:  That's true —

2            THE COURT:  — that there is conduct out there that

3    may not fall within the parameters of a traditional intentional

4    tort, for which we think there should be compensation or should

5    be a claim; but since you can recover on that without proving

6    another traditional intentional tort, we're going to have

7    heightened — we're going to have a heightened requirement of

8    proof.

9            MR. PHILLIPS:  That's true, Your Honor.  I think the

10   classic case of that is where someone calls someone up and says

11   that —

12            THE COURT:  I mean, under your theory — under your

13   theory, it would be in some circumstances more difficult to

14   recover emotional distress damages when somebody engages in

15   intentionally tortious conduct than it would be to recover them

16   when somebody engages in negligent conduct, because in some

17   circumstances the — you could satisfy the impact rule for

18   recovering negligent infliction of emotional distress, and so

19   that defendant is going to be stuck with emotional distress

20   damages.  And yet somebody that proximately causes damages

21   through their own intentional conduct would not, if you're

22   correct.

23            MR. PHILLIPS:  I disagree with that analysis, Your

24   Honor.  I think that — what if the impact rule is satisfied.

25   Emotional distress damages are recoverable, regardless of

1  whether the actions were negligent and intentional.  In other

2  words, if someone runs a red light negligently and hits someone

3  and they have a physical injury accompanied by emotional

4  distress, that defendant can recover.  On the other hand, if a

5  person runs a red light intentionally, it doesn't matter, Your

6  Honor.  They can still recover under the impact rule.

7         What the intentional infliction of emotional distress

8  analysis is supposed to do is further limit recovery of

9  emotional distress damages in situations where the emotional

10  distress does not stem from a personal injury.

11         THE COURT:  Well, let me find the —— I know I read a

12  trespass case that said that they could recover emotional

13  distress damages for a trespass.  And what you've just told me

14  is that no, that's not the case, I must have misread that, and

15  the only way you can recover those damages is through the

16  separate tort of intentional infliction of emotional distress.

17  So I want to nail this down and find this case.

18         MS. ABELL:  Your Honor, *Wright v. Wilcox*?

19         THE COURT:  Where is that in your brief?

20         MS. ABELL:  I don't know if that one's in my brief or

21  not.  But I have two trespass cases right here.  *Norton v.*

22  *Holcomb, 285* Ga.App. 78 ——

23         THE COURT:  Give me that again.

24         MS. ABELL:  *Norton v. Holcomb*, 285 Ga.App. 78.  That

25  is a 2007 case.  That's trespass.

 1            THE COURT:  What does it say?

 2            MS. ABELL:  It says that trespass is an intentional

 3   tort, and you can get nominal damages, general damages, and

 4   punitive damages.  And there is no —

 5            THE COURT:  What does it say about emotional

 6   distress?  Anything?  I thought there was a trespass case out

 7   there that specifically said you could recover emotional

 8   distress.

 9            MS. ABELL:  I believe that would be *Wright v. Wilcox*

10   maybe.  It's 262 Ga.App. 659.

11            MR. PHILLIPS:  What was the name of that one again?

12   I apologize.

13            MS. ABELL:  *Wright*, W-r-i-g-h-t, *v. Wilcox, 262*

14   *Ga.App.* 659.  That's a 2003 case.  That says:  "When a

15   landowner has demonstrated that a trespass occurred, general

16   damages do not have to be proven with any amount to an absolute

17   certainty for the recovery of such damages.  When there has

18   been a tortious invasion of the property of another, i.e.

19   trespass, such tortious conduct gives rise to the right to

20   recover nominal damages to vindicate such right.  As to general

21   damages, where there is such a wrongful interference with the

22   comfortable enjoyment of property by a person in possession, no

23   precise rule for ascertaining damages can be given.  Therefore,

24   jurors are left to say what in their judgment the defendant

25   ought to pay in view of the discomfort or annoyance to which

1    the plaintiff and his family have been subjected by the

2    trespass."

3            MR. PHILLIPS:  And, Your Honor, I would submit that

4    that goes a little bit short of saying you get emotional

5    distress damages when the trespass is to the enjoyment of your

6    real property.  That's almost a — sounds to me more like a

7    cause of action for loss of enjoyment of your real property

8    based on the annoyance of having somebody trespass on your

9    land.  That does not absolutely say that you're entitled to

10   these emotional distress damages.

11           MS. ABELL:  I don't know what annoyance, discomfort,

12   and frustration would be if they're not emotional distress

13   damages, Your Honor.

14           I've got other cases here, if the Court —

15           THE COURT:  Well, see, I mean, this is the problem.

16   These cases — none of them squarely address the issue.  I

17   don't think they do anyway, the ones that I've seen so far.

18   I'm going to go back and study these other ones.

19           MS. ABELL:  But, Your Honor, on this argument about a

20   heightened second step for requiring the plaintiff prove

21   intentional infliction of emotional distress when you have an

22   intentional tort, the Georgia Supreme Court says — didn't

23   undertake that analysis in *Hamilton v. Powell Goldstein,* which

24   is a case cited by both of us.

25           In that case, tiny little opinion, Georgia Supreme

1    Court, is for legal malpractice.  And the Court said that's an

2    intentional tort.  "When the claim is for intentional

3    misconduct, damages for mental distress may be recovered

4    without proof of physical injury."  And it doesn't say anything

5    about —

6            THE COURT:  Did it go through the elements of an

7    intentional infliction of emotional distress claim?

8            MS. ABELL:  No, sir.

9            THE COURT:  What's that case?

10           MS. ABELL:  *Hamilton v. Powell, Goldstein, Frazer,*

11   *and Murphy*, 252 Ga. 149.

12           MR. GOWER:  I think that was a breach of fiduciary

13   duty claim, if I remember correctly.

14           THE COURT:  And the Georgia Supreme Court there

15   allowed the recovery of emotional distress without analyzing

16   whether they met the elements of the tort of intentional

17   infliction?

18           MS. ABELL:  Yes, sir.  This says, "However, when

19   the" — it says:  "As a general precept, damages for mental

20   distress are not recoverable in the absence of physical injury

21   when the claim is premised on ordinary negligence.  However,

22   when the claim is for intentional misconduct, damages for

23   mental distress may be recovered without proof of physical

24   injury.  The principle has its corollary in this:  reckless and

25   wanton disregard of consequences may evince an intention to

1  inflict injury.  It is equally well established that for a

2  reckless disregard of the rights of others equivalent to an

3  intentional tort by the defendant, the injured party may

4  recover for the mental pain and anguish suffered therefrom."

5          THE COURT:  All right, Mr. Phillips.  How do you

6  distinguish that case?

7          MR. PHILLIPS:  Certainly, Your Honor.  What this case

8  essentially said is that in a situation where the conduct was

9  not merely — not merely intentional but reckless and wanton,

10  with a disregard for consequences, that conduct made intent —

11  made events an intent —

12          THE COURT:  To cause harm, an intentional tort.

13          MR. PHILLIPS:  An intentional tort, Your Honor.  In

14  other words —

15          THE COURT:  It says that you can recover it — you

16  can recover emotional distress damages for it without having to

17  go through the heightened proof required for the separate tort

18  intentional infliction of emotional distress.

19          MR. PHILLIPS:  And we think the more thorough

20  analysis, Your Honor, is in a case called *Travis* — *Travis*

21  *Pruitt and Associates, P.C. v.*  — I'm sorry.  Let me get the

22  full cite to that one.  I believe it's — it's 277 Ga.App.

23          THE COURT:  Well, the Georgia Supreme Court, last

24  time I checked, trumps the Court of Appeals.  So, I mean, this

25  *Powell Goldstein* case apparently is a Georgia Supreme Court

1   case.

2          How do you — you can't say the Georgia Court of

3   Appeals was more thorough in another opinion.  You've got to

4   reconcile this case.  How do you reconcile it?

5          Seems to say that this was more than negligence and

6   therefore gives rise to the inference that there was

7   intentional — there was an intentional tort.  And if there's

8   an intentional tort, you can get emotional distress damages.

9          MR. PHILLIPS:  Well, Your Honor, obviously, clearly

10  it's not a conversion case.  It's a —

11         THE COURT:  No, no, no, no.  Your argument's way

12  beyond that.  Your argument has been — now, you've just got to

13  establish credibility with the Court.

14         MR. PHILLIPS:  Yes, Your Honor.

15         THE COURT:  Your argument has been under no

16  circumstances can you recover emotional distress damages for

17  any intentional tort; that in every case under — where you're

18  seeking emotional distress damages, you have got to establish

19  the intentional infliction of emotional distress elements.

20  That's what you've said.

21         Now, that's your position.  Now, how do you

22  distinguish this Georgia Supreme Court opinion?

23         MR. PHILLIPS:  Your Honor, the way I would

24  distinguish this opinion — and I agree that was the position I

25  previously took, and perhaps this is an exception to that

1   position.  What they've granted *certiorari* to determine is

2   whether or not general damages for mental distress were

3   recoverable in a legal malpractice claim.  As Mr. Gower just

4   noted, that's a situation where there's a fiduciary

5   relationship between the parties, and maybe a heightened

6   fiduciary relationship gives rise to emotional distress damages

7   under a lower standard than it would —

8           THE COURT:  But isn't the rationale of the opinion

9   that this cause of action was not simply negligence but it rose

10  to the level of being an intentional tort; and, therefore, the

11  restrictions with regard to not being able to recover emotional

12  distress damages don't apply in the intentional tort context?

13          MR. PHILLIPS:  That appears to be the rationale of

14  the opinion, Your Honor.  However —

15          THE COURT:  Well, is there any other opinion closer

16  on point for that issue by the Georgia Supreme Court?

17          MR. PHILLIPS:  I'm not aware of a Georgia Supreme

18  Court opinion, Your Honor —

19          THE COURT:  Well, I've got to follow the Georgia

20  Supreme Court, don't I?

21          MR. PHILLIPS:  I don't think the Georgia Supreme

22  Court's determinative of how you should rule in this case.

23          THE COURT:  Well, they've determined, apparently,

24  that in an intentional tort case you can get emotional distress

25  damages.  So tell me why the intentional tort of conversion is

 1   distinguishable from the intentional tort of violation of a

 2   fiduciary duty.

 3            MR. PHILLIPS:  Well, fiduciary duty obviously

 4   involves a heightened ——

 5            THE COURT:  Which is where we started.  That's what I

 6   thought your argument was going to be.  Before you made the

 7   broad statement that under no circumstances can you recover

 8   emotional distress damages for any intentional tort, I didn't

 9   think that was going to be your argument.  I thought your

10   argument was going to be there's something different about

11   conversion that is different from other intentional torts; and,

12   therefore, for conversion you can't get emotional distress

13   damages.  And what I came in here curious about is why would

14   conversion be treated different than other intentional torts.

15            So we've now had pointed out to us a Supreme Court

16   opinion that says in at least one intentional tort circumstance

17   you can get emotional distress damages.  Tell me why conversion

18   is so different from that that you shouldn't be able to get

19   emotional distress damages.

20            MR. PHILLIPS:  Well, traditionally, Your Honor —— and

21   this is the 1917 opinion we cited in our case, but —— emotional

22   distress damages were not recoverable with regard to torts to

23   property.  And additionally conversion and its corollary ——

24            THE COURT:  Tell me why the Supreme Court —— let's

25   say this goes up to the Eleventh Circuit and they certify the

1   question over at the Georgia Supreme Court.

2          Tell me the rationale for the Georgia Supreme Court

3   saying, "Okay, in the *Powell Goldstein* intentional tort, they

4   can get emotional distress damages, but they can't get them for

5   a conversion claim."  In other words, if a law firm commits

6   conduct that rises to the level of intentionally causing

7   someone harm, you can get emotional distress damages.  But if

8   I — I'm not saying that y'all did this in this case.  But if I

9   steal your money and cause emotional distress, I can't get

10  emotional distress damages.  Tell me how that distinction makes

11  sense.

12          MR. PHILLIPS:  Your Honor, conversion claims are

13  typically concerned with the recovery of the property or the

14  value of the property and in some cases interests are higher on

15  that property.  They're interested in making —

16          THE COURT:  Well, but presumably, in the *Powell*

17  *Goldstein* case, they had other compensatory damages that could

18  have been recovered there arising from the violation of the

19  fiduciary duty.  So the fact that you can get other damages in

20  addition to the emotional distress shouldn't be dispositive.

21          What I'm trying to find out is your best argument as

22  to how you can rationalize that for this intentional tort you

23  get emotional distress damages and for this one you don't.  How

24  are they so different that it makes sense that you get them for

25  one and not for another?  That's what I'm trying to

1   understand.  Because theoretically that's what the Georgia

2   Supreme Court would be presented with, is do we make an

3   exception here for conversion or is violation of a fiduciary

4   duty an exception to the general rule.  I mean — and why.  Why

5   would that be so?

6           MR. PHILLIPS:  A breach of a fiduciary duty obviously

7   involves the breach of a confidential relationship between the

8   parties, which includes heightened obligations between those

9   two parties.  So I think it makes sense in those contexts.  A

10  greater array of damages may be available —

11          THE COURT:  Why?

12          MR. PHILLIPS:  — after the showing of a personal

13  injury.

14          THE COURT:  Why does it make sense that you would get

15  a greater array of damages than if you stole somebody's money?

16  I mean, maybe there's no fiduciary duty, but — is there a

17  higher duty out — is the duty a lawyer owes to a client

18  professionally a greater duty than a duty somebody has not to

19  steal my money?

20          MR. PHILLIPS:  Yes, Your Honor.  I think a fiduciary

21  duty is a higher duty than a nonfiduciary duty.

22          THE COURT:  A fiduciary duty — but the duty of not

23  stealing somebody else's money.

24          MR. PHILLIPS:  Stealing someone's money is, of

25  course, tortious conduct.  It can give rise to compensatory

```
 1   damages in some circumstances.  It can give rise to punitive
 2   damages.
 3             THE COURT:  You don't think stealing somebody's money
 4   is as egregious as violating someone's fiduciary duty during a
 5   law representation?
 6             MR. PHILLIPS:  Can I just address the terminology
 7   "stealing money" very quickly?
 8             THE COURT:  Yeah.
 9             MR. PHILLIPS:  In this case, Your Honor —
10             THE COURT:  I'm not talking — I'm seeing how far
11   you're willing to go, because you've been willing to go pretty
12   far so far.  I'm talking about a conversion claim.  Some
13   conversion claims involve, "I stole the guy's money.  It was
14   his.  I got it."  That's a classic conversion claim.
15             Under your argument, if the stealing of that money
16   proximately resulted in emotional distress, in addition to
17   losing the value of the money — under your argument, under no
18   circumstances could you recover for that emotional distress.
19             MR. PHILLIPS:  Actually, Your Honor —
20             THE COURT:  Yet we've seen that the Supreme Court has
21   said in a violation of fiduciary duty case you can recover for
22   emotional distress.
23             MR. PHILLIPS:  Actually, Your Honor, my argument was
24   never that you could never recover for that damage.  What we
25   stated was —
```

1          THE COURT:  So your argument is not that you could
2    never recover emotional distress damages for that hypothetical
3    I just gave?
4          MR. PHILLIPS:  No, Your Honor.  If it was an outright
5    theft and —
6          THE COURT:  So under what circumstances could you
7    recover emotional distress damages if someone stole your
8    money?
9          MR. PHILLIPS:  Our position would be that it would be
10   a question of law for the Court as to whether it rose to the
11   outrageous conduct standard necessary to recover emotional
12   distress damages for a tort not involving injury to the person
13   under the IIED standard.
14         THE COURT:  So you could only recover if your
15   emotional distress was severe.
16         MR. PHILLIPS:  Yes, Your Honor.
17         THE COURT:  But just if somebody stole your money and
18   you had emotional distress, you couldn't recover for that.
19         MR. PHILLIPS:  No, Your Honor.  The law does not —
20         THE COURT:  Then why didn't they have to prove in the
21   *Powell Goldstein* case that the emotional distress was severe?
22         MR. PHILLIPS:  If the Court doesn't say, Your Honor,
23   I'm not certain I could speculate.  It has something to do with
24   the fiduciary relationship between the parties.
25         THE COURT:  So how do you distinguish the case?

1          MR. PHILLIPS:  I distinguish the case by saying it's

2    not a conversion case.  It involved a fiduciary relationship

3    between the parties.

4          And also — and to distinguish our specific case,

5    Your Honor, this is not a case where somebody had egregiously

6    went into someone's home and stole their property or their

7    money.  This is a case where plaintiffs, the Blackburns, had

8    set up an allotment to pay Bank of America —

9          THE COURT:  No, I understand.  You misallocated some

10   payments.

11         MR. PHILLIPS:  We applied them to fees as opposed to

12   principal, and later reversed them, Your Honor.  So we don't

13   believe that's a situation where emotional distress damages are

14   appropriate or —

15         THE COURT:  Well — and it may not.  I mean, that's

16   the rub here.  That conduct may not rise to the level of the

17   tort of intentional infliction of emotional distress, but it

18   may rise to the level of conversion, which is an intentional

19   tort.  And the question is why they can't get emotional

20   distress damages for that intentional tort.

21         MR. PHILLIPS:  Well, even in the —

22         THE COURT:  I'm just having a hard time understanding

23   — and it's not your fault.  It's because some of the case law

24   is not the clearest in the world.  But I'm trying to understand

25   how the Supreme Court would answer this and why they would say

1   that some intentional torts you can get emotional distress

2   without proving the heightened intentional infliction of

3   emotional distress elements and in other intentional torts you

4   can.  I'm trying to see what the theory is for that

5   distinction.

6          MR. PHILLIPS:  And I would also point out in the

7   *Powell Goldstein* case where they did talk about a reckless

8   disregard for the rights of others.  And while they equated

9   that to an intentional tort, it does seem to be a heightened

10  standard, just simply committing a tort and having emotional —

11         THE COURT:  Well, some would suggest that reckless

12  disregard is a lower standard than the intentional tort of

13  conversion, because some would suggest that you got negligence,

14  then you got reckless disregard, and then you've got somebody

15  intentionally doing something that causes harm.  So some would

16  suggest that the conduct in *Powell Goldstein* is less egregious

17  than actually committing a intentional tort.

18         For example, in the *Powell Goldstein* context, if they

19  had intentionally set out to do harm to their client, that

20  would be more egregious than recklessly doing harm to their

21  client.  And the Court has apparently said that if they

22  recklessly do harm you can get emotional distress damages,

23  without the impact rule and pecuniary harm.

24         Okay.  Well, as I understand the defendant's

25  argument, the best that can be done at reconciling the *Powell*

1    *Goldstein* case is that there you had violation of fiduciary
2    duty, which was deemed to be an intentional tort because there
3    was such recklessness where the jury could infer intentional
4    conduct.  And here we've just got conversion.
5            MR. PHILLIPS:  And, Your Honor, I would also point
6    out that — to address your last point regarding the — what
7    malicious — or what reckless disregard meant, there is case
8    law out there for the proposition that willful, malicious, or
9    wanton conduct is essentially a punitive damage standard.  And
10   that's from the *Travis Pruitt and Associates* case, which
11   suggests to me that the language could imply a higher standard
12   of culpability than negligence.
13           THE COURT:  But it's not the intentional infliction
14   of emotional distress tort standard.
15           MR. PHILLIPS:  Well, in *Travis Pruitt*, Your Honor,
16   they actually stated — and this a Georgia Court of Appeals
17   case from 2005.
18           THE COURT:  No, let's stick with the Supreme Court of
19   Georgia.  That's who I've got to follow.
20           MR. PHILLIPS:  I understand, Your Honor.  I don't
21   have a Supreme —
22           THE COURT:  You don't see that case as an
23   aberration?
24           MR. PHILLIPS:  I do see it as an aberration under the
25   specific facts.  The issue they granted — chose to grant

1    *certiorari* was specific to a legal malpractice claim.  It

2    didn't deal with intentional torts generally, though I know

3    that their statement could lead to that conclusion, but —

4                THE COURT:  Is that not part of their holding, or is

5    that dicta?  Is it not part of their holding that in this case

6    you can get emotional distress damages because it's more than

7    mere negligence, it rises to the level of intentional tort?  I

8    mean, it seems to me that the argument *Powell Goldstein* was

9    making was this is nothing more than a negligence claim, so

10   that if you're going to recover emotional distress damages

11   you've got to meet the impact rule and all that.  And the

12   Supreme Court said no, that's not applicable.  This is — they

13   could prove this to be equivalent to an intentional tort, which

14   is a different species of claim.

15               And this is cited, you say, Ms. Abell, by both

16   parties?

17               MS. ABELL:  I believe so, Your Honor.

18               THE COURT:  What proposition did you cite it for in

19   your brief, Mr. Phillips?

20               MR. PHILLIPS:  If you'll give me one second, Your

21   Honor, I'll —

22               THE COURT:  Was this cited in the original briefing

23   on this issue or in the supplemental briefing?

24               MS. ABELL:  I believe supplemental.

25               MR. GRISTINA:  It's cited at Footnote 6 of the

1    plaintiffs' brief, Your Honor.

2              MS. ABELL:  Page 11 of the defendant's supplemental

3    brief.

4              THE COURT:  Footnote 6 of the plaintiffs' brief?

5              I'm going to go back and read this opinion.  But,

6    Ms. Abell, if it says what you say it says, I believe I would

7    have put this in all caps the first sentence of my brief.  The

8    fact that you buried it in a footnote causes me some concern as

9    to whether it stands for — as strongly for what you say it

10   stands for.

11             MR. GOWER:  You can use my magic marker.

12             MS. ABELL:  I apologize for burying it.

13             THE COURT:  Well, no need to apologize.  It just —

14             MS. ABELL:  I believe that we were —

15             THE COURT:  You were addressing my questions more

16   than you were this — you were assuming that they weren't going

17   to contend that you can't get emotional distress damages in any

18   intentional tort.

19             MS. ABELL:  I did not —

20             THE COURT:  You didn't know they were going to take

21   that extreme position.

22             MS. ABELL:  I did not know they were going to try to

23   graft IIED on any —

24             THE COURT:  On every intentional tort.

25             MS. ABELL:  And I have some cases I'd like — if

1   you'd give me an opportunity to just put them on the record —

2   that debunk that claim as well.

3            THE COURT:  What are these cases?

4            MS. ABELL:  Well, the Middle District of Georgia,

5   Judge Ashley Royal, in the *Tindall v. H&S Homes*.  That is 2011

6   U.S. District Lexis 121308.  That's dated October 20, 2011.

7            Judge Royal just says, "The plaintiff is not required

8   to satisfy the elements of intentional infliction of emotional

9   distress in order to recover compensation for mental anguish."

10  In that case —

11           THE COURT:  What kind of case is that?

12           MS. ABELL:  Fraud.

13           THE COURT:  Fraud?

14           MS. ABELL:  Fraud.  And there's —

15           THE COURT:  What does he cite?

16           MS. ABELL:  He cites *Stewart v. Williams,* 243 Ga.

17  580.

18           THE COURT:  243 Georgia 580.

19           MS. ABELL:  That's one thing he cites.  He also —

20           THE COURT:  So that case presumably says in a fraud

21  claim you can get emotional distress damages?

22           MS. ABELL:  He put the parenthetical, "Holding that

23  trial court did not err in authorizing an award of damages for

24  mental pain and suffering, even though plaintiff alleged no

25  physical injury."

1          He cited *Hale v. Hale,* which we also cited in our

2    brief, 199 Ga. 150, explaining that "A party injured because of

3    a wanton and willful tort for reckless disregard of others'

4    rights may recover damages for resulting mental pain and

5    anguish."

6          He cited *St. Paul Fire and Marine Insurance Company*

7    *v. Clark*, 255 Ga.App. 14.

8          THE COURT:  Give me the cite for his opinion again?

9          MS. ABELL:  Yes, sir.  It's 2011, U.S. District Lexis

10   121308.  And that is cited in our brief.

11         THE COURT:  Okay.

12         MS. ABELL:  I would also point to a Georgia Court of

13   Appeals case.  I don't know how to pronounce the name.  It's

14   "ZIVE" or "ZEEV".  Z-i-e-v-e *v. Hairston*.  This is 266 Ga.App.

15   753 –– 266 Ga.App. 753.  That's 2004.  This case is an invasion

16   of privacy and fraud case.  This gentleman had hair replacement

17   therapy, and he didn't want his –– he didn't want it disclosed

18   that he'd had it.  And the hair replacement people put it out,

19   published it, put it on TV.  And there's a lot of facts.

20         But they said that "Fraud is an intentional tort for

21   which you can get actual damages.  General damages are presumed

22   from a tort.  Actual damages includes wounded feelings."  And

23   they did not go through an intentional infliction of emotional

24   distress analysis in that.

25         THE COURT:  What is the Georgia case that created the

 1   tort intentional infliction of emotional distress?  Do you —

 2           MS. ABELL:  I don't know that off the top of my

 3   head.

 4           MR. GOWER:  I think that was a *Georgia Power v.*

 5   *Womble* or something like that.

 6           THE COURT:  I mean, my impression of having looked at

 7   that before was the Court was saying there's a area of

 8   wrongful — potential wrongful conduct out there, potential

 9   tortious conduct, that has been beyond the reach of being

10   remedied through traditional intentional tort theories and

11   through negligence theories.  And so we, along with other

12   jurisdictions around the country, are now recognizing this

13   area — narrow area of tort, the intentional infliction of

14   emotional distress.  And because we're concerned about the

15   difficulty in proving or disproving emotional damages, we're

16   going to put a heightened proof element — we're going to have

17   heightened level of proof as to the elements of this tort.  And

18   that makes it more likely that somebody just can't come in and

19   just claim emotional distress and recover those damages.

20           But my recollection was that that did not intend to

21   eliminate damages that were recoverable for other intentional

22   torts.

23           MS. ABELL:  We completely agree.

24           THE COURT:  And if it did, I would assume the Supreme

25   Court would have said so in that case that established that

1  tort that said, "Okay, this now applies to all intentional

2  torts where you seek emotional distress damages."

3  　　　　　MS. ABELL:  Your Honor, I've got ——

4  　　　　　THE COURT:  Let me just give Mr. Phillips an

5  opportunity to ——

6  　　　　　Let's assume, Mr. Phillips, that we're writing on a

7  blank slate; that the Georgia Supreme Court has never squarely

8  addressed whether you can recover emotional distress damages

9  for conversion.

10  　　　　　Give me your best shot as to how it makes sense that

11  you could recover emotional distress damages for an intentional

12  tort involving violation of fiduciary duty but you can't for

13  conversion.  Don't just tell me that conversion is different

14  than violation of fiduciary duty.  That tells me.  But tell me

15  why that distinction makes a difference under —— or should make

16  a difference under Georgia tort law.  That's what I'm grappling

17  with, how that makes sense.

18  　　　　　MR. PHILLIPS:  If I understand the question, Your

19  Honor, what you're asking is why an emotional distress damage

20  would not be available in a conversion claim but would be

21  available in a breach of fiduciary duty claim?

22  　　　　　THE COURT:  Correct.

23  　　　　　MR. PHILLIPS:  Okay.

24  　　　　　THE COURT:  As a policy matter.

25  　　　　　MR. PHILLIPS:  As a policy matter, Your Honor,

1   conversion claims are — involve a crime against property.

2   They're an offense against property.  And the goal of the

3   conversion or trover statute — and all the cases dealing

4   with — and we — both parties have had weeks to look for a

5   case awarding emotional distress damages in a conversion claim,

6   and nobody's found one.  And I think it's fairly clear that the

7   reason is because the goal of those laws is to compensate

8   someone for the loss of their property and potentially interest

9   or hire associated with that loss.  And once that's done, the

10  plaintiff's made whole.  And that's also suggested by the *Lamb*

11  case, which suggested if a property's returned prior to the

12  trial, then plaintiff has no damages anymore.  And at that

13  point their claim is extinguished.

14          THE COURT:  That's a horrible rule.  I mean, that —

15  it really is.  And, I mean, I think I'm the one that cited you

16  to the *Lamb* case in my order.  But to suggest that you can

17  commit a tort and complete all the elements of it, but then

18  after you're caught doing it you can then exonerate yourself

19  from it by returning the property, that makes no sense.  And I

20  think the general commentators on the subject have said so.  I

21  mean, it should go to damages.  It should go to whether or not

22  you suffer damage and the extent of your damages.  But for you

23  to be able to exonerate yourself from previously culminated

24  tortious conduct after a lawsuit has been filed by simply

25  saying, "Here it is, you can now have it back" —

1          MR. PHILLIPS:  I agree, Your Honor.

2          THE COURT:  — that —

3          MR. PHILLIPS:  It's a harsh holding.

4          THE COURT:  It is a harsh holding, and it's

5    inconsistent with — not that Prosser is the god of torts, but

6    it's inconsistent with commentators who have generally not been

7    way out there in evaluating tort law in general.

8          MR. PHILLIPS:  But, Your Honor — and it's a harsh

9    holding.  But, Your Honor, the Court brought this case to

10   everyone's attention —

11         THE COURT:  I did.

12         MR. PHILLIPS:  — and asked them to come up with a

13   rebuttal to it or a response to it.

14         Plaintiffs weren't able to produce a single case

15   rebutting it from the State of Georgia.  Instead, they produced

16   an Eleventh Circuit opinion that originated in the Northern

17   District of Alabama and a 1970-something case from this Alabama

18   Supreme Court.  So despite the fact that it may seem harsh in

19   application, plaintiffs have not in any way rebutted its

20   holding.

21         Additionally —

22         THE COURT:  Have you found anything that cites it

23   supportingly?

24         MR. PHILLIPS:  I think it's supported by —

25         THE COURT:  It could be just some wacko decision that

 1  has been ignored.

 2           MR. PHILLIPS:  I think it's supported by the measures

 3  of damages in conversion claims.  And that's why I think it

 4  makes sense, because of the measure of damages in conversion

 5  claims.  And there's a lot of cases out there stating that if

 6  you lose your property and it's returned to you, the measure of

 7  damages is the — if it's a real property — is the rent on

 8  that property for the amount of time it's gone.

 9           THE COURT:  Well, I tell you what I think they were

10  thinking.  I think they were thinking that in the old days,

11  when you had the — the old days, the tort of conversion was

12  brought — the remedy that was sought for the tort of

13  conversion was this Replevin remedy, where somebody steals your

14  pig and you get it back.  And so the Court was thinking that if

15  the guy took your pig and your remedy was to get your pig back,

16  if you get your pig back, then you don't need the Replevin

17  remedy.

18           MR. PHILLIPS:  Your Honor, I would argue —

19           THE COURT:  But, you know, that's — I'm not saying

20  that any court has said that, but that seems to be the

21  rationale.

22           MR. PHILLIPS:  And I would argue that that's the

23  rationale for trover and conversion law in general and that

24  it's concerned with restoring one's rights and property.  And

25  once in this case the money and interest has been returned,

1   that goal has been achieved.  And it's not unheard of in the
2   law to have a situation where a plaintiff is made whole and
3   nothing more.  Not every area of law will give you windfalls.
4   It would be comparable to, for instance, contract damages or
5   tort damages where all you're entitled to is compensatory
6   damages.  This is a situation where the property and the
7   interest on the property, as I'm happy to explain, have been
8   returned to the plaintiffs.  And therefore, under this case —
9   and they have not come up with a Georgia case to show
10  otherwise — their claim has been extinguished, including their
11  claim for punitive damages.
12          And I know that's a harsh summary, but it also —
13          THE COURT:  Let me just ask you this, Mr. Gower or
14  Ms. Abell.  If somebody goes out and is mad at you and
15  intentionally rams — goes and takes a hammer and damages your
16  unique car that just means the world to you and just
17  intentionally beats it in and tears it up, and you've suffered
18  property damage to that car as a result, and the conduct was
19  intentional, can you get emotional distress damages in addition
20  to your property damage?  Because the argument from
21  Mr. Phillips would suggest that the only way you could get
22  emotional distress damages in that context would be if you
23  prove the intentional tort of emotional distress.
24          MS. ABELL:  If it's an intentional tort, then — you
25  can prove that it's malicious, willful, intentional — then you

1  can get emotional distress damages based on that intentional —

2  that's like a trespass.  That's like interference with your

3  property.  And we've cited cases like *Wright v. Wilcox* that

4  says trespass — which is this whole property distinction that

5  he keeps talking about —

6      THE COURT:  Well, he says there's no case that says

7  you can get emotional distress damages for a trespass.  Tell me

8  what your best case on that is again?

9      MS. ABELL:  We believe that's *Wright v. Wilcox* —

10     THE COURT:  Okay.

11     MS. ABELL:  — and also the *Chamberlin* case that we

12 cited to you at the very beginning.

13     Also, that *Lamb* case is premised on the Georgia

14 Statute O.C.G.A. 44-12-153 about tendering the property.  But

15 that says that if the defendant disclaims all title and tenders

16 the property to the plaintiff when he files his answer.  They

17 did not tender the money back when they filed their answer.

18 They waited until the case was, you know, on down the road and

19 then decided that they can moot the plaintiffs' claims.  But as

20 we've shown, even if it mitigates the damages — the money

21 damages converted — we still have the emotional distress

22 damages that are not fully compensated.

23     MR. GOWER:  Could I —

24     THE COURT:  Yes, sir, Mr. Gower.

25     MR. GOWER:  I'd just like to address your last

1  question about hitting the car and damaging it and whether you

2  can get emotional damages.  I think the answer is yes, if you

3  can prove proximate cause.  The normal situation would be, I

4  think, if they tear up your car and fix it, then you don't get

5  emotional damages.  But if it's — if you get emotional — you

6  can get emotional damages if they're proximately caused.

7  Because if it's a Thunderbird, it's a 19-whatever and you've

8  restored it and all that, you can't replace it.  And you could

9  get emotional damages.  That's my thinking.

10          THE COURT:  Okay.  Mr. Phillips, I'm going to give

11  you about five minutes uninterrupted to give me your best

12  shot.  And let's focus on this issue of why you can't get

13  emotional distress damages for this claim, rather than the

14  other issues I raised, because this to me is the more difficult

15  one to answer.  And if you've already said everything that you

16  intended to say, then you don't need to say anything.  But I

17  want to give you five minutes to wrap up here.

18          MR. PHILLIPS:  I appreciate that, Your Honor.  And

19  beyond the issue of whether or not you can get emotional

20  distress damages for an intentional tort generally — which

21  obviously we disagree with plaintiffs on — there's also an

22  issue of causation.  And there's simply no evidence in this

23  case whatsoever that — what happened here is that the

24  plaintiffs sent in some overpayments on their mortgage, as Your

25  Honor is aware.  And instead of being applied to principal, as

1    plaintiffs intended, some of these payments were applied to

2    fees.  $342 were applied to late fees.  And all of those

3    payments were returned before this lawsuit was ever filed.

4    Another $75 were applied to inspection fees.  Those payments

5    were refunded at the beginning — middle of this year, May of

6    2012.

7            And, Your Honor, the way that Bank of America

8    refunded these fees — did so — they didn't just give them

9    back to them, or they didn't just apply them to principal on

10   the day they were refunded.  They went retroactively, rebuilt

11   that account from the ground up.  So the plaintiffs got the

12   benefit of those fees being applied to principal every single

13   day the Bank of America would have received those payments,

14   which essentially gave them the benefit of the time value of

15   the money over interest.  So they have been fully compensated,

16   Your Honor.

17           Turning to the issue of why emotional distress

18   damages should not be recoverable in every emotional distress

19   claim, Your Honor.  And the reason emotional distress damages

20   require a heightened showing in non-personal injury cases is

21   because in a non-personal injury case the emotional distress is

22   just more remote from the injury than it is in a personal

23   injury case.  And to allow a jury to award emotional distress

24   damages outside of a heightened quantum of proof would open the

25   door potentially — to potentially unlimited liability in cases

```
 1   where the evidence of injury and causation are limited only by
 2   the testimony of the plaintiff and the whim of the jury.  And
 3   those claims would be ripe for exaggeration and fraud.  And by
 4   requiring this extreme and outrageous, as we believe,
 5   requirement —— and they call it willful, malicious —— they have
 6   some different words for it.  And I think if you look at the
 7   case law, while different cases use different terminology, it's
 8   certainly a heightened pleading standard, and I don't think ——
 9   or a heightened proof standard —— I don't think they met it
10   here.
11           But by requiring that heightened standard, what the
12   IIED standard does and what emotional distress law in Georgia
13   does is it limits recovery of emotional distress damages to the
14   most culpable defendants and the most deserving plaintiffs.
15   And I don't think the Blackburns' expansive view of Georgia law
16   recognizes or appreciates that policy.
17           Additionally, Your Honor, as I was mentioning
18   earlier, the facts in this case —— that these, you know, $75 in
19   fees post-filing of the lawsuit —— there's no evidence in this
20   case, either in the deposition testimony of the plaintiffs or
21   in the interrogatory requests —— where we specifically asked
22   them, you know, tell us about your emotional distress, tell us
23   about your damages —— at no point have the plaintiffs ever made
24   the claim that, "Look, I was emotionally distraught because I
25   was charged these $75 in fees or these $342 in fees, which have
```

1    since been returned."

2            So even setting aside this can—it—be—recoverable

3    issue for a second, there's no allegation of causation, as

4    Mr. Gower just asserted —— alluded to —— and there's no

5    allegation of emotional distress that flowed from the

6    conversion claim.  So we believe that also bars their claim.

7            And additionally, Your Honor, back to my broader

8    point that —— and why we believe that emotional distress

9    damages require this heightened showing of intentional

10   infliction of emotional distress conduct —— is because

11   otherwise the case law of Georgia, as we see it, doesn't make

12   sense.  Every single conversion case in Georgia that anybody

13   has identified where emotional distress damages were considered

14   uses this IIED analysis.  And plaintiffs have not presented a

15   single case, a conversion case, saying otherwise.

16           I know they've alluded to this *Chamberlin* case.  But,

17   Your Honor, the *Chamberlin* case simply doesn't say what the

18   plaintiffs say it does.  In *Chamberlin,* what the Court said ——

19   and this is an old 1955 case in dicta —— the Court said that

20   "In a proper case, the intentional tort on property can support

21   a damage for emotional distress."  They didn't specifically say

22   it was a conversion case.  And it's not entirely clear what

23   theory they were going under.  It could have been conversion.

24   It could have been trespass.  It could have been intentional

25   infliction of emotional distress.  The theory's unclear.

1          What they did recite was the facts, which is that the

2    defendant, Chamberlin Company of America, improperly entered

3    the plaintiff's home and removed their furniture and personal

4    possessions without any right to do so.  They did so in front

5    of her friends and neighbors, which caused her embarrassment

6    and humiliation.  And then she had to pay a bond and storage

7    fees and transportation costs to get her personal effects

8    back.  And because of this she became nervous and sick and

9    sought medical treatment, and she had medical expenses.

10          Nowhere in the opinion does it say that she was

11   entitled to emotional distress damages on a conversion claim.

12   And in fact, one could argue that under those facts a Court

13   could find that the emotional distress damages were appropriate

14   under other theories, including either an IIED theory for

15   barging into this lady's house and taking all her property in

16   front of her friends and family, or under a pecuniary loss

17   exception to the impact rule.

18          That case, *Chamberlin*, relies on *Atlanta Hub v.*

19   *Jones*, which is an even older case, 1933, in which a drunk debt

20   collector went to the home of the debtor, put a gun to her face

21   to collect a debt.  It was a pregnant debtor.  She passed out,

22   lost consciousness, and collapsed.  In that case the Court

23   again was very unclear about why they were awarding the

24   damages.  They just said it was a proper case.

25          So I think the better reading of these older cases

1  cited by the plaintiffs isn't that you always get emotional

2  distress damages for an intentional tort but that in a really

3  aggravated case involving bad facts you could get emotional

4  distress damages.  And I think that's consistent with the

5  current reading of the law, which is as we've seen in these

6  conversion cases -- which included *Harden, Williams*, and *Evans*,

7  which are all cited in our brief -- where, when faced with an

8  emotional distress claim, the Court analyzed the emotional

9  distress claim under an IIED standard.

10           And here's what I keep coming back to on this.  On

11  appeal, as I'm sure this Court is aware, a court can affirm a

12  verdict for -- or a judgment for any reason.  It doesn't matter

13  if the court below had the right reason or the wrong reason.

14  The Court of Appeals can affirm that verdict or that judgment

15  for any reason.  So in these cases all the Court had to do to

16  affirm the judgment for emotional distress would have been to

17  say, "Well, the intentional tort was met and, therefore, you

18  will get your emotional distress."  Instead, none of these

19  cases did that.  They're all conversion cases.  And in all

20  these cases they said, "You've got a conversion, we agree.  You

21  took the man's car.  You took another man's car.  You took away

22  the wedding dress that she couldn't use for her wedding."  But

23  they still went through this IIED analysis, instead of just

24  giving them the damages.  And they said the conduct wasn't

25  outrageous enough, wasn't extreme enough, to warrant the

1   collection of IIED damages.

2           Those are the only conversions cases that have ——

3   real conversion cases that have been put before this Court that

4   discuss the recovery of these damages.  We think that's the

5   proper analysis, Your Honor.  And also we feel very strongly

6   the plaintiffs have not established that any emotional

7   distress, much less compensable emotional distress, flowed from

8   the conversion of this small amount of fees, which were later

9   returned to them without any real negative impact on them.

10          So those are the points I'd like to make, Your

11  Honor.  I appreciate the Court's time and ——

12          THE COURT:  All right.  Ms. Abell or Mr. Gower?  Do

13  you want to just wrap up, or do you believe you've said

14  everything you need to say?

15          MR. GOWER:  Well, I always have something to say.

16          I think the real answer to what Mr. Phillips said is

17  the gatekeeper to emotional damages on an intentional tort is

18  proximate cause.  It's up to the jury.  That's the gatekeeper.

19  Just because it's intentional tort doesn't mean the jury is

20  going to grant the emotional damages.

21          MS. ABELL:  I want to, if you don't mind, say what

22  Mr. Gower didn't say.  I want to refer to a case *H. J. Russell*

23  *and Company v. Jones*, 250 Ga.App. 28.  250 Ga.App. 28.

24          In that case the Court used this malicious, willful,

25  wanton exception to the impact rule on a negligent retention

1    claim.  An employee was sexually harassing another employee.

2    So she sued the employer for negligent retention.  And the

3    Court said emotional distress damages are allowable, and they

4    did not go through any intentional infliction of emotional

5    distress analysis there.  So that's just one other one.

6         This *Evans v. Willis* case that he talks about with

7    the wedding address — and he said the Court of Appeals went

8    through an intentional infliction analysis — well, that's

9    because she brought a claim for intentional infliction as well

10   as conversion.  That may be the same for this *Harden* case.  I

11   believe — yeah.  These plaintiffs are asserting intentional

12   infliction, so, of course, the Court is analyzing an

13   intentional infliction claim.

14        The other cases that I cited you to earlier did not

15   rely on intentional infliction, didn't bring it up, and the

16   Court didn't go through the analysis.  And I think that *Tindall*

17   case in the Middle District of Georgia would be an interesting

18   read.

19        THE COURT:  Let me ask you one last question,

20   Ms. Abell.  Do you think a ruling that the plaintiff can

21   recover emotional distress damages based on the alleged

22   conversion here would be inconsistent with a ruling that there

23   are insufficient facts to show by clear and convincing evidence

24   that the defendant engaged in conduct that subjects it to

25   punitive damages?

1              MR. GOWER:  Would you mind repeating that?

2              THE COURT:  Do you think —

3              MR. GOWER:  I didn't follow.

4              THE COURT:  Do you think the two following rulings

5    are reconcilable:  that the plaintiff can recover emotional

6    damages on the conversion claim because the Court finds under

7    Georgia law that for an intentional tort emotional damages are

8    recoverable if they're proximately caused by the intentional

9    tort, but the evidence in the current record is insufficient to

10   show clear and convincing evidence that the defendant's conduct

11   rises to the level of authorizing punitive damages?

12              In other words, do you think those two could be

13   reconcilable —

14              MS. ABELL:  I think —

15              THE COURT:  — where you could get emotional damages

16   for your conversion claim and yet not be allowed to get

17   punitive damages because the evidence doesn't get to the level

18   of clear and convincing evidence of conduct that authorizes

19   punitives?  Do you think those two rulings would be

20   reconcilable?

21              MS. ABELL:  That's reconcilable because, as you

22   pointed out, the burden is different on those two.  A jury or a

23   Court might believe that one burden has been met, the other has

24   not.

25              THE COURT:  In other words, the standard for

1    establishing conversion by a preponderance of the evidence is a

2    lower standard than establishing punitive conduct by clear and

3    convincing evidence.

4             MS. ABELL:  Correct.

5             THE COURT:  Do you agree with that?

6             MS. ABELL:  I agree.

7             THE COURT:  All right.

8             MR. PHILLIPS:  Your Honor, may I have one minute to

9    rebut?

10            THE COURT:  Yes, sir.

11            MR. PHILLIPS:  Thank you very much.

12            I just want to make two points very quickly.  In

13   the — they've mentioned the *Tindall* case several times, and I

14   just feel the need to — because it does have language in there

15   that says, as they claim it does, there's no need to do this

16   IIED analysis.

17            THE COURT:  The biggest problem — the biggest — not

18   the problem.  And I'm going to go back and study it.  But the

19   issue — the question, I think, is going to come down to this

20   *Powell Goldstein* case by the Supreme Court and whether that

21   case in fact says that for that intentional tort you can get

22   emotional distress damages without having to prove the elements

23   of intentional infliction of emotional distress.  And if that's

24   what the Supreme Court holds in that case, is there a rational

25   reason for creating exception to that rule for conversion.

1          Because if there are no other Georgia cases that

2   squarely address the issue and only address it indirectly, then

3   the controlling law for the Court is really going to be that

4   *Powell Goldstein* decision.  And the Court not to follow it is

5   going to have to find that a conversion claim is

6   distinguishable from that intentional tort.  And the mere fact

7   that in all these other cases the Court may have done an

8   intentional infliction of emotional distress analysis, without

9   saying why it was doing it, does not overcome the holding of

10  the Supreme Court that in that intentional tort you get

11  emotional distress damages.  So to me that's going to be the

12  key.

13          MR. PHILLIPS:  And if I could just recommend one

14  other case for your —

15          THE COURT:  Yes, sir.

16          MR. PHILLIPS:  — the Court's consideration, because

17  I understand the Court's point.  And the reason we cited *Powell*

18  *Goldstein* in our case was because we recognized that that case

19  said that intentional — that willful — malicious, willful, or

20  wanton conduct intentionally directed to harm the plaintiff may

21  invent an intent to inflict injury.

22          And we then discussed the *Travis Pruitt v. Associates*

23  case — *and Associates* case — which is at 277 Ga.App. 1, where

24  they incorporated — *Powell Goldstein's* a 1984 case.  *Travis*

25  *Pruitt* is a 2005 Georgia Court of Appeals case.  And our

1  reading of *Travis Pruitt* is that they incorporated this concept

2  of — this concept of a showing of willful or wanton conduct

3  into the more thorough IIED analysis.  And they used one as the

4  steppingstone to get to others.  So I'd just ask the Court to

5  read that case in conjunction with the *Powell Goldstein* case,

6  Your Honor.

7            THE COURT:  Did the intentional infliction of

8  emotional distress tort exist at the time *Powell Goldstein* was

9  decided?  I assume it did.

10            MR. PHILLIPS:  Your Honor, I'll be honest.  I don't

11  know exactly when the tort arose.

12            THE COURT:  Okay.  I'm just curious as to why the

13  Supreme Court would not have done this analysis if that's the

14  law.

15            Okay.  All right.  Well, thank you for your

16  supplemental briefing.  We will get out an order shortly

17  because I've — we're going to send you a notice of pretrial

18  conference.

19            Did y'all make a motion for summary judgment as to

20  all of the claims in the case?

21            MR. PHILLIPS:  I believe there's a — I believe

22  there's accounting for breach of contract we did not make a

23  motion for summary judgment as to.

24            THE COURT:  Yeah.  So I'm going — if you haven't

25  already gotten it, we'll be sending out a pretrial notice.

1   Because regardless of how this comes out, there will be a claim

2   that would remain pending for trial at our March term.  But

3   we're going to get out an order as quickly as we can so when

4   you're preparing your proposed pretrial order you'll know

5   exactly what claims we're going to be trying.  So I'm confident

6   that we will get out an order by the end of the year.

7          Okay.  Thank you for coming.

8       (Proceedings concluded at 11:33 a.m.)

9                    CERTIFICATE OF REPORTER

10          I, Betsy J. Peterson, Official Court Reporter of
    the United States District Court, in and for the Middle
11  District of the State of Georgia, Columbus Division, a
    Registered Professional Reporter, do hereby CERTIFY that the
12  foregoing proceedings were reported by me in stenographic
    shorthand and were thereafter transcribed under my direction
13  into typewriting; that the foregoing is a full, complete, and
    true record of said proceedings.

14

15                    This 31st day of December, 2012.

16

17                    s/Betsy J. Peterson
18                    Betsy J. Peterson, RPR,CCR
                      Federal Official Court Reporter
19

20

21

22

23

24

25